ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VIII

| PEDRO JOSÉ NIEVA ANNONI<br><br>Parte Apelada<br><br>v.<br><br>LORRAINE IRENITA FUSTER SANTANA<br><br>Parte Apelante | KLAN202400123 | *Apelación,* procedente del Tribunal de Primera Instancia, Sala Superior de Guayama<br><br>Caso Núm.: PO2023RF00199<br><br>Sobre: Divorcio - Ruptura Irreparable |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Monge Gómez, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 25 de marzo de 2024.

Compareció ante este Tribunal la parte apelante, la Sra. Lorraine Irenita Fuster Santana (en adelante, la "señora Fuster Santana" o la "Apelante"), mediante recurso de apelación presentado el 12 de febrero de 2024. Nos solicitó la revocación de la *Sentencia* dictada por el Tribunal de Primera Instancia, Sala Superior de Guayama (en adelante, el "TPI"), el 11 de enero de 2024, notificada y archivada en autos en la misma fecha. Mediante el referido dictamen, el foro apelado declaró "Ha Lugar" la "**Petición de Divorcio Individual**" (en adelante, la "**Demanda**") decretando la disolución del vínculo matrimonial habido entre las partes de epígrafe, por la causal de ruptura irreparable.

Por los fundamentos que expondremos a continuación, se *confirma* la *Sentencia* apelada.

**I.**

El caso de autos se originó el 7 de marzo de 2023, con la presentación de la *Demanda* sobre divorcio interpuesta por el Sr. Pedro José Nieva Annoni (en adelante, el "señor Nieva Annoni" o el "Apelado") en contra de la Apelante. A través de su escrito, alegó que: (1) es marino

mercante de profesión; (2) trabaja jornadas ininterrumpidas en alta mar, seguidas por períodos de treinta (30) días consecutivos de descanso; (3) su dirección es 804 South Road Boyton Beach, Florida, Estados Unidos; (4) el 2 de enero de 2023, luego de una disputa entre las partes, mientras se encontraba en la jurisdicción de Puerto Rico, entendió que el matrimonio estaba roto irreparablemente; (5) que los hechos que dieron por culminado los nexos de convivencia matrimonial ocurrieron en Puerto Rico, por lo que procedía que esta jurisdicción fuera la que decretara el divorcio entre las partes, (6) la señora Fuster Santana ha residido en Puerto Rico por más de un año, específicamente desde el 6 de marzo de 2022; y que (7) contaba con una propiedad ubicada en el Municipio de Lajas, Puerto Rico. Además, solicitó que la patria potestad fuera compartida y que las relaciones paternofiliales se establecieran en función del bienestar óptimo de los menores.

Así las cosas, el 10 de mayo de 2023, la Apelante radicó su "**Contestación a la Demanda**". A través de la misma, argumentó que: (1) no era vecina de Ponce, Puerto Rico, puesto que su dirección física estaba ubicada en 804 South Road, Boyton Beach FL, 33435, (2) durante las estadías en Puerto Rico se alojó junto al Apelado y sus hijos en común en la residencia de su madre ubicada en el Municipio de Ponce, (3) el incidente entre la partes que detonó las razones para presentar la *Demanda* no ocurrió en Puerto Rico, sino en el estado de la Florida en horas de la madrugada del 2 de enero de 2023; y  (4) que ha estado viviendo en Puerto Rico por las dificultades en el desarrollo del habla de su hijo, pero que no ha sido de manera continua e ininterrumpida por espacio de un (1) año.

Expresó que se ha mantenido viajando continuamente entre Florida y Puerto Rico durante los años 2022 y 2023. Asimismo, negó tener la intención de vivir permanentemente en Puerto Rico y se opuso a la custodia compartida de los hijos menores de edad. En este mismo escrito, incluyó una "**Reconvención**" mediante la cual alegó que existe un patrón de maltrato psicológico, económico y emocional por parte del Apelado en su contra. Así pues, también solicitó la disolución del vínculo matrimonial por

la causal de ruptura irreparable. Igualmente, solicitó como medidas cautelares la imposición de una pensión alimentaria para sus hijos, una pensión *pendente lite* por la cantidad de $6,000.00 y se refiriera al Apelado a evaluación psicológica para evaluar sus capacidades protectoras, antes de tener contacto con sus hijos menores de edad, entre otros remedios.

Posteriormente, el 21 de mayo de 2023, el señor Nieva Annoni presentó "**Réplica a Contestación a Demanda y Contestación a Reconvención**" mediante la cual reiteró que la Apelante residía en el pueblo de Ponce y que su intención era permanecer en Puerto Rico. Añadió que uno de sus hijos recibía terapias y asistía a una escuela en dicha localización. También señaló que los viajes esporádicos que ha realizado la señora Fuster Santana no interrumpían el período de residencia requerido por ley. Indicó que se ha hecho cargo de los gastos tanto familiares como los de la Apelante y que la cuantía reclamada era excesiva. Por último, arguyó que la señora Fuster Santana es arquitecta y abogada, por lo que tiene la capacidad de generar ingresos superiores a los suyos.

Luego de varios trámites procesales, el 9 de enero de 2024, la Apelante presentó una "**Moción Solicitando la Vivienda Familiar como Hogar Seguro para los Menores de Edad como requisito *sine qua non* para celebrar Vista de Disolución del Vínculo Matrimonial**" (en adelante, "**Moción Solicitando la Vivienda Familiar**"). Relató que tanto sus hijos como ella se encuentran en una situación de inestabilidad e inseguridad respecto a su hogar ubicado en el estado de la Florida y que allí se encuentran todas las pertenencias de los menores, sus bienes muebles y cuentas bancarias. También manifestó que cierta *Orden* del TPI que establece que los menores no pueden ser removidos de la jurisdicción de Puerto Rico no permitía el viaje de los menores a su residencia en Florida. Como corolario de lo anterior, solicitó que antes de que se llevara a cabo la vista de divorcio se hiciera una determinación de hogar seguro sobre la vivienda familiar. Expresó que, si el Tribunal entendía que no procedían las alegaciones sobre hogar seguro, tampoco se debía atender el divorcio en este caso, por lo que la "**Demanda**" debía ser desestimada.

En esta misma fecha, el foro primario declaró "No Ha Lugar" la solicitud de desestimación de la "**Demanda**" por falta de jurisdicción y le concedió un término al señor Nieva Annoni para presentar su posición a la solicitud de designación de hogar seguro. Al día siguiente, el Apelado presentó su "**Oposición a Moción solicitando la Vivienda Familiar…[entrada 261]**".

Finalmente, el 11 de enero de 2024, se celebró la vista de divorcio. A dicho señalamiento, compareció la Apelante, a través de su representación legal, la Lcda. Ruz Torres Orengo (en adelante, la "Lcda. Torres Orengo") y el Apelado representado por el Lcdo. José Asencio Quiles (en adelante, el "Lcdo. Asencio Quiles"). Antes del desfile de la prueba, se les permitió a las partes argumentar sus respectivas posturas sobre la procedencia de la solicitud de la señora Fuster Santana sobre hogar seguro. Escuchadas las partes, el foro apelado determinó que carecía de jurisdicción para conceder dicho remedio, pues la propiedad inmueble sobre la que se solicitaba el hogar seguro se encontraba en el estado de la Florida.

Adjudicado el asunto sobre hogar seguro, se procedió con el desfile de prueba relacionado con la solicitud de divorcio. Es menester destacar que de la transcripción de la prueba oral (en adelante, "TPO") **la única evidencia presentada consistió del testimonio del señor Nieva Annoni, <u>mientras que la Apelante se negó a participar del proceso</u>**. Lo anterior, presuntamente, porque fue el interés de la Apelante solicitarle la inhibición al juez que preside los procedimientos, sin embargo, no se había presentado solicitud escrita a esos efectos.

Luego de evaluar la evidencia presentada, el TPI emitió una *Sentencia* mediante la cual: (1) declaró "Ha Lugar" la *Demanda*; (2) estableció que la patria potestad sería compartida y que la custodia la ostentaría la señora Fuster Santana; (3) ordenó a la Unidad de Relaciones de Familia a establecer un plan provisional de relaciones filiales hasta el 16 de febrero de 2024; (4) consignó que carecía de jurisdicción para atender asuntos relacionados al inmueble ubicado en el estado de la Florida; e (5)

impuso el pago de la suma de $5,000.00, por concepto de honorarios de abogado a favor del Apelado.

Inconforme con lo anteriormente resuelto, la Apelante acudió a este Tribunal mediante el recurso de epígrafe, en el que señaló los siguientes errores:

**PRIMER ERROR: ERRÓ Y ABUSÓ DE SU DISCRECIÓN EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL NO DESESTIMAR LA CAUSA DE ACCIÓN DE DIVORCIO POR CARECER DE JURISDICCIÓN SOBRE LA MATERIA.**

**SEGUNDO ERROR: ERRÓ Y ABUSÓ DE SU DISCRECIÓN EL HONORALE TRIBUNAL DE PRIMERA INSTANCIA AL NO CELEBRAR UNA VISTA EVIDECIARIA PARA RECIBIR PRUEBA SOBRE LA ALEGACIÓN DE FALTA DE JURISDICCI[Ó]N SOBRE LA MATERIA PREVIO A LA CELEBRACIÓN DE LA VISTA DE DIVORCIO.**

**TERCER ERROR: ERRÓ Y ABUSÓ DE SU DISCRECIÓN EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL IMPONER HONORARIOS POR TEMERIDAD A LA PARTE APELANTE.**

El 20 de marzo de 2024, compareció el señor Nieva Annoni mediante "**Alegato en Oposición a Recurso de Apelación**".

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

El término jurisdicción ha sido definido como el poder y autoridad que poseen los tribunales para considerar y decidir sobre las controversias ante su consideración. Cobra Acquisitions v. Municipio de Yabucoa et al., 210 DPR 384, 394 (2022). Para adjudicar un caso, el tribunal debe tener jurisdicción tanto sobre la materia en cuestión como sobre las partes en disputa. Adm. Terrenos v. Ponce Bayland, 207 DPR 586, 600 (2021). La jurisdicción sobre la materia se trata de la capacidad del tribunal para abordar y solucionar controversias sobre aspectos legales particulares. Rodríguez Rivera v. De León Otano, 191 DPR 700, 708 (2014). Es por ello que los tribunales deben ser celosos guardianes de su jurisdicción. Torres Alvarado v. Madera Atiles, 202 DPR 495, 500 (2019). Así pues, la ausencia de jurisdicción conlleva las siguientes consecuencias inexonerablemente

fatales: (1) la falta de jurisdicción no es susceptible de ser subsanada, (2) las partes no pueden voluntariamente otorgarle jurisdicción sobre la materia a un tribunal, ni el tribunal puede abrogársela, (3) los dictámenes de un foro sin jurisdicción sobre la materia son nulos, (4) los tribunales tiene el ineludible deber de auscultar su propia jurisdicción, (5) los tribunales apelativos, además, deberán examinar la jurisdicción del foro de donde procede el recurso y (6) el planteamiento de falta de jurisdicción sobre la materia puede presentarse en cualquier etapa del procedimiento. Allied Mgmt. Group. v. Oriental Bank, 204 DPR 374, 386 (2020). A causa de lo antes dicho, cuando un tribunal determina que no tiene jurisdicción sobre la materia, solo puede así declararlo y desestimar el caso. Beltrán Cintrón et al. v. ELA et al., 204 DPR 89, 102 (2020).

A tenor con lo anterior, el Artículo 424 del Código Civil de Puerto Rico regula lo concerniente a la jurisdicción en los casos de divorcio. En específico, dispone lo siguiente:

> **Ninguna persona puede solicitar u obtener la disolución de su matrimonio** por divorcio, de conformidad con las disposiciones de este Código, **si no ha residido en Puerto Rico por un año, de manera continua e inmediatamente antes de presentar la petición**, **a menos que los motivos que dan lugar a la petición individual en que se funde haya ocurrido en Puerto Rico o cuando uno de los cónyuges reside aquí**. El periodo de residencia del cónyuge promovente puede ser menor si la muerte presunta del cónyuge ocurre en Puerto Rico. 31 LPRA sec. 6771 (énfasis suplido).

Esto es, un tribunal posee jurisdicción sobre un caso de divorcio en tres circunstancias, a saber: (1) cuando quien solicita la disolución del matrimonio ha vivido un año en Puerto Rico antes de presentar la demanda, de manera continua e inmediatamente; (2) cuando las circunstancias que generan la solicitud de divorcio ocurrieron en Puerto Rico; **o** (3) cuando al menos uno de los cónyuges reside en Puerto Rico. Cabe resaltar que no es requerido que todas estas condiciones estén presentes simultáneamente. La ocurrencia de una de ellas es suficiente para establecer la jurisdicción del tribunal. Así, el referido Artículo exime al demandante de cumplir con el requisito de residir un año en Puerto Rico si se satisface cualquiera de las restantes condiciones. Prawl v. Lafita Delfin,

100 DPR 35, 37 (1971); González Miranda v. Santiago, 84 DPR 380, 383 (1962).[1]

Por otra parte, es fundamental señalar que los conceptos residencia y domicilio no tienen el mismo significado. La residencia se ha descrito como el lugar donde una persona se encuentra durante cierto periodo de tiempo, accidental o incidentalmente, sin intención de domiciliarse; mientras que el domicilio es su sitio permanente de vivienda. S.L.G. Solá-Moreno v. Bengoa Becerra, 182 DPR 675, 688 (2011); Prawl v. Lafita Delfin, *supra*, pág. 37. Una persona puede residir en un determinado lugar por diversos motivos como trabajo, estudios o placer. Prawl v. Lafita Delfin, *supra*, pág. 37. Por lo tanto, es posible ser residente en Puerto Rico sin tener la intención de permanecer indefinidamente aquí. Íd.

**B.**

Es norma conocida en nuestro ordenamiento jurídico que, ante la ausencia de error manifiesto, prejuicio, parcialidad o pasión, no se favorece la intervención de los tribunales apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia. Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co., 209 DPR 759, 779 (2022). Al respecto, la Regla 42.2 de las Reglas de Procedimiento Civil dispone que "[l]as determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos". 32 LPRA Ap. V, R. 42.2.

Es decir, un tribunal apelativo no tiene facultad de sustituir por sus propias apreciaciones las determinaciones del foro de instancia. Serrano v. Auxilio Mutuo, 171 DPR 717, 741 (2007). La razón jurídica detrás de esta normativa se fundamenta en la apreciación que hace el adjudicador de los hechos de la prueba testifical, porque al ser una tarea llena de elementos

---

[1] Es menester destacar que dichas Opiniones del Tribunal Supremo se dieron dentro del contexto del entonces vigente Artículo 97 del Código Civil de 1930, 31 LPRA sec. 331 (derogada), que disponía de un lenguaje análogo al actual Artículo 424 del Código Civil de 2020, *supra*.

subjetivos, es él quien está en mejor posición para aquilatarla. Sucn. Rosado v. Acevedo Marrero, 196 DPR 884, 917 (2016). El Tribunal de Primera Instancia es el foro que tiene la oportunidad de escuchar el testimonio y apreciar el comportamiento de los testigos. Dávila Nieves v. Meléndez Marín, 187 DPR 750, 771 (2013). Basándose en ello, adjudica la credibilidad que le merecen los testimonios. Así, la declaración directa de un sólo testigo, de ser creída por el juzgador de hechos, es prueba suficiente de cualquier hecho. SLG Rivera Carrasquillo v. AAA, 177 DPR 345, 357 (2009).

A tenor con lo anterior, se le concede respeto a la adjudicación de credibilidad realizada por el juzgador primario de los hechos, dado que el foro apelativo cuenta solamente con "récords mudos e inexpresivos". Trinidad v. Chade, *supra*, pág. 291. No obstante, la norma de deferencia judicial tiene límites y no supone una inmunidad absoluta frente a la función de los tribunales revisores. El Tribunal Supremo aclaró en Dávila Nieves v. Meléndez Marín, *supra*, por primera vez, qué constituye que un juez adjudique con pasión, prejuicio o parcialidad, o que su determinación sea un error manifiesto. Allí se concluyó que un juzgador incurre en pasión, prejuicio o parcialidad si actúa "movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna". Íd., pág. 782.

Por otro lado, se consideran claramente erróneas las conclusiones del foro revisado si de un análisis de la totalidad de la evidencia, el foro apelativo queda convencido de que "se cometió un error, [...] [porque] las conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida". Íd., pág. 772. En otras palabras, incurre en un error manifiesto cuando "la apreciación de esa prueba se distancia de la realidad fáctica o es inherentemente imposible o increíble". Pueblo v. Toro Martínez, 200 DPR 834, 859 (2018).

Por lo tanto, la facultad de los tribunales apelativos para sustituir el criterio de los tribunales de instancia se reduce a aquellas circunstancias en las que, a la luz de la prueba admitida, "no exista base suficiente que apoye su determinación". Gómez Márquez *et al.* v. El Oriental, 203 DPR 783, 794 (2020). Como es conocido, las diferencias de criterio jurídico no cumplen con el referido estándar de revisión. Íd.

**C.**

En nuestro ordenamiento, la imposición de honorarios de abogado únicamente procede en derecho cuando una parte ha actuado con temeridad o frivolidad. Torres Vélez v. Soto Hernández, 189 DPR 972, 993 (2013) (citando a Santiago v. Sup. Grande, 166 DPR 796, 820 (2006)). Cónsono con esta norma, la Regla 44.1 (d) de Procedimiento Civil establece, en lo pertinente, que "[e]n caso que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta…". 32 LPRA Ap. V, R. 44.1 (d).

A pesar de que la citada Regla no especifica la naturaleza de una conducta temeraria, la jurisprudencia la ha descrito como "aquellas actuaciones de un litigante que lleven a un pleito que pudo evitarse, que provoquen la prolongación indebida del trámite judicial o que obliguen a la otra parte a incurrir en gastos innecesarios para hacer valer sus derechos". SGL González-Figueroa v. SLG *et al.*, 209 DPR 138, 148 (2022). Así, la penalidad que se impone por conducta temeraria tiene por fin "disuadir la litigación frívola y fomentar las transacciones mediante sanciones que compensen a la parte victoriosa los perjuicios económicos y las molestias producto de la temeridad de la otra parte". Marrero Rosado v. Marrero Rosado, 178 DPR 476, 505 (2010).

También se ha indicado que el propósito de la imposición de honorarios por temeridad es penalizar a la parte que por su "terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las

molestias, gastos, trabajo e inconvenientes de un pleito". C.O.P.R. v. S.P.U., 181 DPR 299, 342 (2011).[2] Es decir, que es temerario quien torna necesario un pleito frívolo, o **provoca su indebida prolongación, obligando a la otra a incurrir en gastos innecesarios**. Colón Santos v. Coop. Seg. Mult. P.R., 173 DPR 170, 188 (2008); P.R. Oil v. Dayco, 164 DPR 486, 511 (2005); Domínguez v. GA Life, 157 DPR 690, 706 (2002).

La determinación de si una parte obró con temeridad descansa en la sana discreción del juzgador. SGL González-Figueroa v. SLG *et al.*, *supra*, pág. 151. Determinada la existencia de temeridad, el tribunal deberá tomar en cuenta una serie de factores para poder calcular la cantidad que concederá, a saber: "(1) el grado de temeridad; (2) el trabajo realizado; (3) la duración y naturaleza del litigio; (4) la cuantía involucrada, y (5) el nivel profesional de los abogados". C.O.P.R. v. S.P.U., *supra*, págs. 342-343. La cantidad concedida en honorarios de abogado, al amparo de la Regla 44.1 de Procedimiento Civil, *supra*, no necesariamente tiene que ser equivalente al valor de los servicios legales prestados, sino a "aquella suma que en consideración al grado de temeridad y demás circunstancias el tribunal concluye que representa razonablemente el valor de esos servicios". Santos Bermúdez v. Texaco P.R., Inc., 123 DPR 351, 357 (1989).

**III.**

Los primeros dos errores están íntimamente relacionados, por lo que se abordarán de manera conjunta en la discusión. La señora Fuster Santana plantea que el TPI erró y abusó de su discreción al no desestimar la causa de acción de divorcio, por carecer de jurisdicción sobre la materia y al no celebrar una vista evidenciaria para recibir prueba sobre dicha alegación. No nos convence su postura. Nos explicamos.

Surge del expediente del caso que las partes contrajeron matrimonio el 11 de febrero de 2017, en el Municipio de Ponce, Puerto Rico. Posteriormente, procrearon dos hijos en el estado de la Florida. Seis años después, el señor Nieva Annoni solicitó la disolución de dicho matrimonio en Puerto Rico. La vista de divorcio se llevó a cabo el 11 de enero de 2024.

---

[2] Citando a S.L.G. Flores-Jiménez v. Colberg, 173 DPR 843, 866 (2008).

Surge de la TPO que, al comienzo de ésta se les dio la oportunidad a las partes para expresar sus posturas sobre la *Moción Solicitando la Vivienda Familiar*. Luego de que el Tribunal determinara que no tenía jurisdicción para establecer ninguna medida provisional sobre el inmueble sito en el estado de la Florida, la Apelante, a través de su representación legal, expresó que no estaba preparada para ver el divorcio, puesto que entendía que para decretar la disolución del vínculo matrimonial entre las partes sin establecer un hogar seguro para los menores colocaría a estos últimos en un estado de vulnerabilidad.

Además, solicitó verbalmente y sin presentar moción en cumplimiento con las Reglas de Procedimiento Civil, la inhibición del juez que presidió los procedimientos. En particular, hizo alusión a un supuesto audio comprometedor. Luego de que el juzgador de instancia le informara que debía mediar un escrito solicitando su inhibición y que no eran suficientes las expresiones verbales, el juez intentó que se juramentara a las partes para prestar testimonio. No obstante, quien único prestó juramento lo fue el señor Nieva Annoni, **pues la Apelante decidió no participar del proceso y renunció a contrainterrogar o presentar prueba a su favor**.

Nótese pues, que ante la negativa de la Apelante de presentar evidencia o de participar de la vista de divorcio, **la única prueba presentada fue el testimonio, bajo juramento, del señor Nieva Annoni**. Surge del testimonio incontrovertido del Apelado que este reside en el Municipio de Lajas, Puerto Rico.[3] Asimismo, declaró que entendió que su matrimonio culminó el 2 de enero de 2023 en Puerto Rico mientras iba de camino al Municipio de Ponce.[4] Expresó que uno de sus hijos asiste a un cuido y toma terapias del habla en Puerto Rico desde el verano del 2022.[5] Respecto a la residencia de las partes al momento de presentar la *Demanda*, testificó lo siguiente:

---

[3] Transcripción de la Prueba Oral, pág. 50.
[4] Íd., pág. 54.
[5] Íd., pág. 56.

Honorable Juez:

P      Cuando presentó la demanda ¿Dónde usted vivía, señor?

       En ese momento estaba viviendo Florida, pero obviamente taxable, eh, "taxable", mis taxes se pagaban en Florida.

P      ¿En Florida? Pero, ambos vivían en Florida.

**R      Ehhh, no, porque la Demanda se puso en marzo y <u>ya ella llevaba un año en Puerto Rico</u>.**

P      Ah, ya llevaba un año en Puerto Rico cuando se radicó la Demanda.

R      Se, pone, que vivía en Florida por los taxes, porque los taxes era mi residencia primaria para los taxes. Por eso los taxes ahora de este año, va a salir con la dirección mía de Puerto Rico.

P      O sea, cuando usted presentó la Demanda, ¿usted ya vivía en Puerto Rico?

R      Llevábamos, llevábamos, yo llegaba viajando a Puerto Rico 3 veces de mi trabajo, yo volé a Puerto Rico o 2 veces.

P      La pregunta es bien sencilla, cuando presenta la Demanda ¿Usted vivía en Puerto Rico ¿Sí o no?

R      Para mi entender yo vivía en Puerto Rico, Honorable...

Lcdo. José Asencio Quiles:

P      Por qué para yo entender, explíqueme bien.

R      Y yo llevaba un año, yo llevaba un año viajando a Puerto Rico. Lo que pasa es que yo pongo en la Demanda que yo vivo en Florida porque mi dirección postal y mi dirección de trabajo está en la Florida. Porque no voy a poner la dirección de mi suegra.

P      Pero donde usted vivía en ese momento, ¿dónde era?

R      Puerto Rico

P      Puerto Rico

R      Yo estaba viviendo en…

P      ¿Dónde en Puerto Rico?

R       En casa de mi suegra, vinimos a vivir a casa de mi suegra.

P      ¿En dónde? ¿En qué mun…, pue…?

R      En Ponce.

P      En Ponce. "Okay". Y la parte demandada ¿dónde vivía también en Puerto Rico?

R       **Sí, en Puerto Rico, sí**. [6]

En su recurso, la señora Fuster Santana argumentó que no residió en Puerto Rico un año antes a la fecha de la presentación de la *Demanda*, por lo que el Tribunal carecía de jurisdicción para atender el caso. A su vez, alegó que su residencia es el estado de la Florida y que ha vivido en Puerto Rico. Dado a que la Apelante no testificó en la aludida vista, del recurso presentado ante nuestra consideración lo único que surgen son meras alegaciones respecto a su lugar de residencia, las cuales no constituyen prueba. Como mencionamos anteriormente, la única prueba no controvertida que tuvo ante sí el TPI fue el testimonio del Apelado, quien declaró bajo juramento que la Apelante vivía en Puerto Rico hacía más de un año.

Sobre este particular, entendemos necesario establecer que si bien de la TPO se desprende que la señora Fuster Santana llevaba viviendo un (1) año en nuestra jurisdicción cuando el Apelado presentó la *Demanda* y, por tanto, se justifica la jurisdicción del TPI, no es menos cierto que la Apelante en su recurso sostiene que el requisito de un año de residencia continua e inmediatamente antes de la presentación del divorcio le aplica a ambas partes en el pleito, de conformidad con el Artículo 424 del Código Civil, *supra*. Sin embargo, no hemos hallado (ni la apelante hace referencia) a ninguna autoridad que establezca el requisito de un año de residencia continua de ambas partes en este tipo de litigio. Nótese que, conforme el Artículo 424 del Código Civil, *supra*, quien tiene que probar haber residido en Puerto Rico continua e inmediatamente lo es el promovente de la acción, aunque también se podría comprobar la autoridad del foro de instancia para entender en los méritos de un caso de divorcio cuando "**los motivos que dan lugar a la petición individual en que se funde haya ocurrido en Puerto Rico o cuando uno de los cónyuges reside aquí**". 31 LPRA sec. 6771.

En suma, el tracto del caso demuestra que la Apelante tuvo la oportunidad de presentar prueba e impugnar el testimonio del Apelado

---

[6] Íd., págs. 63-66 (énfasis suplido).

referente a que ella era residía en Puerto Rico al momento de la solicitud de divorcio, sin embargo, se rehusó a hacerlo. En otras palabras, renunció a su derecho de presentar prueba y contradecir o impugnar el testimonio del señor Nieva Annoni.

Como hemos adelantado, para que un tribunal pueda atender un caso de divorcio, al menos uno de los cónyuges debe residir en Puerto Rico al momento de la presentación de la demanda. 31 LPRA sec. 6771. Asimismo, el término de residencia se refiere al lugar donde una persona se encuentra ya sea por motivos de trabajo, estudios o placer, sin intención de que sea su sitio permanente de vivienda. S.L.G. Solá-Moreno v. Bengoa Becerra, *supra*, pág. 688; Prawl v. Lafita Delfin, *supra*, pág. 37. A base de la prueba no impugnada por la parte Apelante y creída por el foro apelado, quedó establecido que, para el 7 de marzo de 2023, fecha de la presentación de la *Demanda*, la señora Fuster Santana llevaba residiendo un año en Puerto Rico.

A nivel apelativo resulta improcedente impugnar una prueba que debió haberse impugnado ante el TPI, quien es el juzgador de los hechos y quien aquilata la evidencia presentada. Así pues, en ausencia de error manifiesto, pasión, prejuicio o parcialidad, estamos en la obligación de concederle entera credibilidad a las determinaciones de hechos realizadas por el foro primario. Alusivo a lo anterior, queda demostrado que no procedía la desestimación de la causa de acción de divorcio, puesto que se cumplió con uno de los requisitos que provee nuestro Código Civil. Es decir, al momento de la presentación de la *Demanda*, la prueba demostró que la Apelante residía en Puerto Rico junto a sus dos hijos. La exigencia del año de residencia continua e inmediatamente antes de la presentación de un pleito de divorcio aplica exclusivamente a la parte que promueve la disolución del matrimonio.

Ahora bien, aún si hiciéramos abstracción de lo anterior, surge de la "**Reconvención**" presentada por la señora Fuster Santana que los hechos que provocaron la *Demanda* ocurrieron en Puerto Rico. Específicamente, la Apelante sostuvo lo siguiente:

> Todos los hechos anteriores han provocado que se den por culminados los nexos de convivencia matrimonial, todos ocurridos en Puerto Rico, por lo que la demandante reconviniente solicita, respetuosamente, a este Honorable Tribunal que se declare roto y disuelto el vínculo matrimonial entre las partes por la causal de Ruptura Irreparable, a tenor con los Artículos 424 y 425 del Código Civil de Puerto Rico.[7]

De las transcritas alegaciones consignadas por la propia señora Fuster Santana, se desprende que los motivos que dieron lugar a la petición de divorcio en este caso ocurrieron en Puerto Rico. Es decir, por admisión de la Apelante, el récord demuestra claramente que concurre otro de los requisitos que el Artículo 424 del Código Civil, *supra*, establece para otorgarle jurisdicción al TPI para entender en los méritos de la *Demanda*. Y es que resulta lógico concluir de esta forma, pues sería un contrasentido jurídico solicitarle al foro primario, mediante la "**Reconvención**", la disolución del matrimonio habido entre las partes y al mismo tiempo, cuestionar la jurisdicción de dicho foro. No se cometieron los primeros dos (2) errores, pues el foro *a quo* tenía jurisdicción sobre la materia para decretar el divorcio y les concedió amplia oportunidad a ambas partes para presentar prueba sobre la existencia o no de dicha autoridad.

Como último señalamiento de error, la señora Fuster Santana alega que el TPI erró al imponerle honorarios de abogados por temeridad. Esta postura tampoco nos resulta convincente. Veamos.

Durante el tiempo que el caso estuvo ante el Tribunal de Primera Instancia, Sala Superior de Ponce, se llevaron a cabo múltiples vistas, siendo las fechas de estas vistas el 30 de mayo de 2023, 6 de junio de 2023, 16 de junio de 2023 y 5 de julio de 2023. Aparte de estas vistas, se señaló una vista para el 25 de septiembre de 2023, en la cual se atenderían asuntos relacionados a las relaciones paternofiliales y la reinstauración del Apelado con los menores, **todo ello debido al incumplimiento de la Apelante con las relaciones parentales previamente establecidas**. Más adelante, en las vistas celebradas en el Tribunal de Primera Instancia, Sala Superior de Guayama, el 13 de octubre de 2023 y el 8 de diciembre de

---

[7] *Véase*, Expediente del Sistema Unificado de Manejo y Administración de Casos (SUMAC), entrada núm. 38, ¶9, pág. 7.

2023, la Apelante se opuso a que se atendiera el divorcio, indicando que era necesario abordar primero sus reclamaciones sobre remedios provisionales.

Así pues, se reseñaló una vez más la vista para el 11 de enero de 2024. Dos días antes de este señalamiento, la señora Fuster Santana radicó la *Moción Solicitando la Vivienda Familiar*. Durante la aludida vista se le denegó la solicitud de hogar seguro, posteriormente, pretendió que se considerara una solicitud **verbal** de inhibición del juez, se negó nuevamente a que se atendiera el divorcio y no participó del proceso.

El análisis detenido y ponderado del trámite procesal acaecido en el caso revela que el divorcio instado por el Apelado llevaba pendiente de adjudicación durante un espacio de diez (10) meses. Asimismo, el expediente del caso ante el TPI demuestra que se le otorgaron múltiples oportunidades a la Apelante para atender sus peticiones, previo al decreto de divorcio. Tan es así, que el día de la vista de divorcio se le concedió la oportunidad para argumentar el asunto de designación de hogar seguro, el mismo fue resuelto por el TPI y tras la determinación, la Apelante se negó a participar del proceso y renunció a presentar prueba. También surge del expediente que la señora Fuster Santana pretendió que se paralizaran los procedimientos pues expresó verbalmente que solicitaría la inhibición del juez que presidía los procedimientos.

Además, surge que la Apelante incumplió con los dictámenes del Tribunal sobre la forma en que se llevarían a cabo las relaciones filiales y efectuó imputaciones a funcionarios del Tribunal. Por ser meritorio, citamos las porciones de la *Sentencia* apelada en las que constatan las incidencias que provocaron la imposición de honorarios de abogado y que fueron comprobadas por este Tribunal, veamos:

> De manera específica, notamos que durante el tiempo que el caso estuvo ante la atención del Tribunal de Ponce, por conducto de la Honorable Jueza Lourdes L. Gómez Torres, surge del récord múltiples vistas. Surgen vistas celebradas el 30 de mayo de 2023, 6 de junio de 2023, 16 de junio de 2023, 5 de julio de 2023 y había una cuarta vista señalada para el 25 de septiembre de 2023 en la que entre otras cosas, se atenderían reclamos relacionados a las relaciones filiales así como la reposición de relaciones de la parte demandante con los menores ante el incumplimiento de la parte demandada

con las relaciones filiales establecidas. Dicha reposición surge ya que específicamente la Honorable Jueza Lourdes L. Gómez Torres tuvo ordenar a la parte demandada a cumplir con las relaciones filiales ordenadas so pena de encontrarla incurso en desacato, véase orden 20 de septiembre de 2023. Surge del Récord que la referida Vista del 25 de septiembre de 2023, en donde se atendería el desacato de la parte demandada nunca pudo ser celebrada ya que en una moción donde se anunciaba conflicto de calendario, la parte demandada anunció que utilizaría como testigo a su señora madre, o sea la Lcda. Roseline Santana Ríos. Lo anterior provocó que la Honorable Jueza Lourdes L. Gómez Torres solicitara a la Jueza Administradora que decidiera si el caso podía continuar en Ponce ya que la testigo anunciada por la parte demandada, había sido Jueza Superior en el Tribunal de Ponce. Por lo tanto, debido a dicha situación la Honorable Jueza Lissette Toro Velez dictó Orden de traslado, ordenando que el caso fuera transferido al Tribunal de Guayama.

En el Tribunal de Guayama, el caso estaba señalado para vista en sus méritos para el 13 de octubre de 2023, la cual fue atendida por la Honorable Jueza María de los A. Silva Basora. En dicha vista, se intentaron atender los asuntos pendientes del caso, sin embargo, solamente se pudo atender el asunto relativo a la pensión provisional de los menores ya que la parte demandada se negó a que se atendiera el divorcio, argumentando que se tenían que atender los remedios provisionales solicitados por ella. Surge de la Minuta de la Vista que, durante las argumentaciones, la parte demandada aparentemente le faltó el respeto a la Honorable Jueza Silva Basora, haciendo imputaciones de que alegadamente se sentía atropellada. También surge de la Minuta de la referida vista que la Honorable Jueza Silva Basora indicó que no aceptaría faltas de respetos y que la representante legal de la parte demandada solicitó disculpas al Tribunal. Ese día, el caso quedó señalado para el 8 de diciembre de 2023.

El 7 de diciembre de 2023, la parte demandante presentó Urgente solicitud para que se proceda con el divorcio. En la misma, la parte demandante solicitó que, en la vista del 8 de diciembre de 2023, se atendiera también el divorcio entre otras cosas. El 7 de diciembre de 2023, dictamos Orden en la que dispusimos que atenderíamos la Urgente solicitud para que se proceda con el divorcio en la Vista del 8 de diciembre de 2023.

Dicha Vista del 8 de diciembre de 2023, fue atendida por el juez suscribiente ya que la Honorable Jueza Silva Basora estaba indispuesta de salud, lo que informamos a inicios de la vista. En la Vista, la parte demandada se opuso a que se atendiera el divorcio ese día indicando que necesitaba un día de vista para que se atendieran sus reclamos de remedios provisionales. Luego de escuchado los argumentos de los abogados, accedimos al pedido de la parte demandada y separamos el 11 de enero de 2024 para atender el divorcio y los remedios provisionales.

Dos días antes de la vista de hoy, o sea el 9 de enero de 2024, la parte demandada presentó Moción Solicitando la Vivienda Familiar como Hogar Seguro para los Menores de Edad…. Solicitando que previo al divorcio se atendiera su reclamo de hogar seguro, y argumentó que del Tribunal entender que no podría conceder el reclamo el caso debía desestimarse. El 10 de enero de 2024, la parte demandante

presentó Oposición a "Moción Solicitando la Vivienda Familiar…" en la que argumentó que carecemos de autoridad para atender el reclamo de hogar seguro, ya que se trata de una propiedad sita en el Estado de Florida.

Según solicitó la parte demandada, el primer asunto que atendimos en la vista de hoy fue su reclamo de hogar seguro. Además de haber leído los escritos de las partes, le dimos a ambas partes la oportunidad de sus respectivos argumentos. Luego de las argumentaciones, informamos en Sala nuestra determinación de declarar No Ha Lugar la solicitud de hogar seguro. Luego de anunciar dicha determinación en contra de la parte demandada, la representante legal de la parte demandada informó que su cliente quería hablar. Le dimos un receso a la representante legal de la parte demandada para que hablara con su cliente para ver qué quería decir y tras dicho receso informó que la parte demandada tenía planteamientos que hacer, específicamente que interesa pedir la inhibición del Juez que maneja el caso por haber alegadamente escuchado algo en una grabación.

Determinamos que no era el foro para hacer tales alegaciones, que celebraríamos la vista de divorcio y remedios provisionales. Le dimos a la parte demandada la oportunidad de presentar prueba sobre sus reclamos de remedios provisionales. También se le dio la oportunidad de contrainterrogar a la parte demandante y objetar la prueba. La parte demandada, aunque se mantuvo en Sala, de manera recurrente informaba que no participaría de los procesos ya que no estaba de acuerdo que continuaran.[8]

A nuestro juicio, el análisis de cada una de las anteriores incidencias ocurridas ante el TPI, son demostrativas de que el proceso se vio retrasado innecesariamente en varias ocasiones. Aunque coincidimos con la Apelante a los efectos de que la utilización de un testigo no puede ser penalizada, aunque sean personas reconocidas en el escenario jurídico, el restante de las actuaciones provocó la prolongación indebida del trámite judicial y colocaron al señor Nieva Annoni en una situación en la que tuvo que incurrir en gastos innecesarios para continuar con el litigio. Así pues, a la luz de las circunstancias particulares del caso, entendemos que el foro *a quo* no se extralimitó en sus facultades discrecionales al entender que la Apelante incurrió en temeridad. Por consiguiente, procede sostener la imposición de honorarios de abogados que dispuso el foro primario.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen, se *confirma* la *Sentencia* apelada.

---

[8] *Véase*, Apéndice del recurso, págs. 5-7.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones